**IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF TEXAS HOUSTON DIVISION**

| | | |
|---|---|---|
| **SYLVIA DESCOURS** | § | |
| **Plaintiff** | § | |
| | § | |
| | § | **CIVIL ACTION NO. _____** |
| | § | |
| **v.** | § | |
| | § | |
| | § | |
| **WRIGHT NATIONAL FLOOD INSURANCE** | § | |
| **Defendant** | § | |

<u>**PLAINTIFF'S ORIGINAL COMPLAINT**</u>

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

COME NOW, Sylvie Descours ("Plaintiff"), and files this Complaint, complaining of Wright National Flood Insurance Company ("Wright" or "Defendant"), and for cause of action, Plaintiff would respectfully show this Honorable Court the following:

<u>**PARTIES**</u>

1.      Plaintiff Sylvie Descours ("Plaintiff") is an individual residing in Harris County, Texas.

2.      Defendant Wright National Flood Insurance was and is a private insurance company doing business in Texas and may be served with process by serving its registered agent, C T Corporation System, 1999 Bryan St., Ste 900, Dallas, Texas 75201-3136. Defendant is a "Write Your Own" ("WYO") carrier participating in the National Flood Insurance Program ("NFIP") pursuant to the National Flood Insurance Act ("NFIA" or "the Act"), as amended 42 U.S.C. § 4001.  Defendant issued Plaintiff a Standard Flood Insurance Policy (the "Policy") in its own name, as a fiscal agent of the United States.  Pursuant to 44 C.F.R. Section 62.23(d) and (i)(6), Farmers was and is responsible for arranging the adjustment, settlement, payment and defense of all claims arising under the Policy.

<u>**JURISDICTION**</u>

3.      This action arises under the NFIA, federal regulations and common law, and the flood

insurance Policy that Defendant procured for and issued to Plaintiff in its capacity as a WYO carrier under the Act.  The Policy covered losses to Plaintiff's property and contents located in this judicial district.

4.      Federal Courts have exclusive jurisdiction pursuant 42 U.S.C. § 4072 over all disputed claims under an NFIA Policy, without regard to the amount in controversy, whether brought against the government or a WYO company.

5.      This Court has original exclusive jurisdiction to hear this action pursuant 42 U.S.C. § 4072 because the insured property is located in this judicial district.

6.      This Court also has original jurisdiction pursuant to 28 U.S.C. § 1331 because this action requires the application of federal statutes and regulations and involves substantial questions of federal law.

## VENUE

7.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 and 42 U.S.C. § 4072 because it is where the Plaintiff's property is located and where a substantial part of the events at issue took place.

## FACTS

8.      Congress established the NFIP in 1968 in order to reduce the public burden of expenses after flood disasters. 42 U.S.C. § 4001. The program is administered by the Federal Emergency Management Agency ("FEMA"). *Id.* § 4011.  FEMA promulgated the Policy and directed that these policies may be issued through private insurers known as "Write Your Own" (WYO) companies. *Id.*; 44 C.F.R. § 62.23; 44 C.F.R. pt. 62 app. B. As "fiscal agent[s] of the Federal Government," WYO insurers deposit SFIP premiums in the United States Treasury and pay SFIP claims and litigation costs with federal money. 42 U.S.C. §§ 4017(a), (d); 44 C.F.R. §§ 62.23(g), (i)(6), (i)(9). WYO insurers cannot vary the terms of the SFIP without express written consent from the federal insurance

administrator. 44 C.F.R. §§ 61.4(b), 61.13(d)-(e).

9.      Wright sold and issued to Plaintiff a Homeowners Insurance Policy ("the Policy") to protect and insure the Plaintiff's dwelling, other structures, and personal property, among other areas and items thereof, against covered loss events like the mass flooding of May 7, 2019.

10.     This is a first-party insurance claim dispute arising out of the May 7th, 2019 flooding in Kingwood, TX, when close to 400 homes in Kingwood took on water due to heavy rainstorms. Plaintiff's property, located at 4903 Creek Shadows Drive, Kingwood, Texas 77339, in Harris County ("the Property"), including her home and personal property.  Significant amounts of water that intruded through the Property, resulting is substantial damage to the flooring, walls, insulation, framing, doors, cabinets, fixtures, and otherwise throughout the entire home and property. The flood water also caused extensive damage to Plaintiff's personal property.

11.     Shortly thereafter, Plaintiff filed a claim (the "Claim") on her insurance Policy with Wright, for the flood damage, and subsequently submitted a Proof of Loss.  At that time, and pursuant to her Policy, Plaintiff made a simple request to the Defendant — to cover and pay for the cost of repairs to the Property, other structures, and personal property, among all other covered damages and areas damaged by the May 7th, 2019 flooding.

12.     At all times relevant, Plaintiff was and is entitled to benefits under her Policy as it specifically covered the Property and personal property for damages caused by covered perils, including flooding like that which occurred on May 7th, 2019, and the costs to repair and/or replace the damages caused by the covered peril.

13.     Plaintiff duly performed and fully complied with all conditions of the Policy. Wright assigned Colonial Claims as the third-party adjusting company to handle Plaintiff's claim. Colonial Claims assigned Tyler Powell ("Powell") as the independent adjuster responsible for assessing, documenting, and adjusting the Plaintiff's Claim. On or about May 11, 2019, Powell inspected

Plaintiff's Property. Powell was not adequately equipped or properly trained/instructed in handling the adjustment of insurance damage claims according to FEMA regulations, and as a result, he failed to perform an adequate investigation and evaluation of Plaintiff's Claim.

14.     Plaintiff did not agree with Powell's assessment and undervaluation of the damages to the Property. Upon review of Defendant's estimates, Plaintiff notified Powell of numerous issues and areas of concern, including but not limited to the following:

•       There was no money for removal of grout, but it was expected of Plaintiff to replace the grout;

•       Plaintiff's walls were textured but there was no money allotted for texturing;

•       Plaintiff's wall oven was part of a built-in unit that was attached to itself and touched the floor. Nowhere were funds allowed for its removal or replacement;

•       There was money allotted for the storm door, but the outer part of same that was damaged was not mentioned;

•       The removal and replacement of the tile in the entryway was not provided for;

•       Plaintiff's Property had wood flooring with quarter round, shoe molding and transitions; however, there was not a monetary allotment for the removal and replacement of these items;

•       The master bath toilet area had tile for which there was not a monetary allotment for the removal and replacement thereof;

•       The master bedroom has a fireplace that sustained water damage; however, the repair of this damage does not appear in Powell's estimate, despite Plaintiff bringing this to his attention. Incidentally, during the demolition phase of Plaintiff's neighbor's property, their fireplace was removed, and it was discovered that the sheet rock and insulation behind the brick that was absolutely soaked with contaminated water.  Plaintiff's home and the

neighbor's home were built by the same company and within the same time frame, Plaintiff's contractor advised removing the brick due to high probability of soaked sheet rock and insulation behind the fireplace. After the brick was removed, wet sheet rock and insulation was found and removed. However, no funds were allocated, despite the possibility of the same issue being present in the living room fireplace

• The wood and sheet rock on either side of the stairs received no funds for removal and replacement;

• The master bathroom contained two sinks; however, money was only allotted for one sink;

• Plaintiff provided Powell with evidence of damaged purses (two pages worth) having an estimated value of approximately $7,000.00, but only one purse was allocated funds;

• Approximately 100 items were removed without Plaintiff's permission, and prices were changed drastically, e.g. a standing rotating heater with remote would have had a brand-new cost (within several months of the flood) of approximately $150 to $200. Powell put a value of $13.00, then depreciated it.

• Plaintiff's countertops were unable to be saved due to the attachment to the wall, attachment to the cabinets and the very nature of laminate itself, resulting in 95' of kitchen and wet bar laminate destroyed or rendered useless; in addition, the divider between the dining and living area had bamboo, which Plaintiff had recently installed, was not marked for replacement.

• Plaintiff's jacuzzi tub was cracked and broken during its removal process, as well as the half bath, master bath sinks due to the flood damage. The marble countertops in the bathrooms also broke during removal.

• There was extra of the bamboo flooring, molding, shoe and quarter round that had

been destroyed but not listed in the personal property by Powell.

- •       Plaintiff's washing machine was rendered unusable due damage sustained in the flood. It was less than three (3) years old.

15.    Plaintiff, however, was not satisfied with the amount being offered by Wright to repair and/or replace their severely damaged Property and otherwise. Plaintiff felt as though Wright and its personnel Powell, had failed to perform a thorough and reasonable investigation and adjustment of her Claim, and undervalued her damages and underpaid on the Claim. As a result of the above, Plaintiff submitted to Powell additional Proofs of Loss, along with photographs, a detailed estimate of the repairs, a contents inventory of personal property damaged with photos, receipts, bids, proposals, and varying other information.

16.    The inadequacy of Wright and Powell's substandard inspection(s) is evidenced by the fact that above-covered damages and necessary repairs were omitted from the inspection estimate(s), and the area and damages that were included were grossly undervalued.

17.    Wright failed to adequately supervise, train, and oversee Powell, but nonetheless, adopted his estimate(s) without question, and failed to allow adequate funds to cover the cost of repairs to all the covered damages the Property, personal property, and other structures sustained. As a result of these shoddy investigations and/or adjustments, the Plaintiff was significantly underpaid. Even more dissatisfied with a partial payment, the Plaintiff sought help.

18.    It is unclear as to why Wright misrepresented the scope and details of Plaintiff's damages, and coverage of the same.

19.    It is clear, however, that Wright failed to thoroughly review and properly oversee the work of its assigned adjusters and/or representatives. Nevertheless, Wright relied on Powell's estimate(s), and ultimately approved his improper adjustment and inadequate, unfair settlement of Plaintiff's Claim.

20.     There is no question that the Policy between Plaintiff and Wright covered the damages to Plaintiff's Property and personal contents; therefore, Plaintiff was and is entitled to receive all Policy benefits, among other damages available under the law and equity.

21.     Plaintiff alleges that Wright and Powell set out to deny and underpay her Claim for properly covered damages. Wright failed to properly train, adequately supervise, and oversee Powell's handling of the Claim. As a result, he failed to perform thorough and reasonable investigations of Plaintiff's Claim. Specifically, Defendant failed to sufficiently inspect and document all damaged areas of the Property, other structures, and personal property, and as such, failed to properly estimate the damages and repairs needed. This resulted in a grossly deficient scope and underpayment of the Claim.

22.     Compounding Wright's failure to adequately train and supervise their inexperienced adjuster, Wright further failed to adequately review the estimates of the damages. Rather, Wright adopted and accepted them without question. Further, Wright ratified Powell's inadequate methods of conducting adjustments and investigations of property damages, resulting in the Claim being denied in part as well as undervalued and underpaid in part. Plaintiff has suffered actual damages resulting from Defendant's wrongful acts and omissions as set forth above and further described herein. As a result of Defendant's unreasonable investigation and underpayment, as well as payment delays, Plaintiff was not provided adequate funds needed to repair the May 7th, 2019 flood damage to the Property. In short, Plaintiff's Claim was improperly adjusted. To date, Plaintiff has yet to receive full payment to which she is entitled under the Policy.

23.     The Policy covered the flood damages to the Property. Therefore, Plaintiff is entitled to receive all Policy benefits. There is no question that Wright undervalued and underpaid the majority of damaged items as well as denying others without merit. As a result, resolution of the Claim has been delayed by the deficient and improper claims handling by Wright.

24.     The insurance Policy in effect between Plaintiff and Wright is a contract wherein the insurance company, Wright, offers to provide insurance coverage and services associated therewith in exchange for the policyholder's payment of annual premiums in consideration of the contract. However, this particular Policy falls under the NFIP administered by FEMA.  As stated above, FEMA and/or NFIP enter into arrangements with private insurance companies, also known as Write Your Own (WYO) Companies, to administer FEMA/NFIP flood insurance policies, and adjust and pay claims accordingly as required. As part of the WYO Companies Arrangement with the FEMA/NFIP, the WYO Companies, like Wright, agree to adjust claims in accordance with FEMA regulations, under the guidance of the NFIP Claims Manual. The WYO Companies and their agents get reimbursed from federal Treasury funds upon presentment of a simple invoice for services related to their handling of a flood insurance claim.

25.     The policy for Plaintiff, issued by Defendant, reads as follows:

> This policy and all disputes arising from the handling of any claim under the policy are governed exclusively by the flood insurance regulations issued by FEMA, the National Flood Insurance act of 1968, as amended (42 U.S.C. 4001, et seq., and Federal Common law).

26.     To aid insurers and insureds alike in following the federal regulations, FEMA has issued multiple bulletins. In its analysis, Plaintiff has used the following FEMA documents, attached hereto and made a part hereof

Exhibit A – Technical Bulletin 2 (Aug. 2008) *Flood Damage-Resistant Materials Requirements*
Exhibit B – NFIP Adjuster Claims Manual last revision June 2010.
Exhibit C –Addendum to the NFIP Adjuster Claims Manual Perimeter Wall Sheathing Addendum, Part 3 – Section VIII
Exhibit D – FEMA bulletin W-13025a Claims Guidance
Exhibit E – Centers for Disease Control *Flood Water After a Disaster or Emergency*
Exhibit F – Harrelson Estimate
Exhibit G – Standard Flood Insurance Policy Dwelling Form

27.     Regarding Plaintiff's claim, Powell completely disregarded all of the above documents.  As a result, Plaintiff was only able to repair the home as to the adjuster line item requirements, rather than the requirements under FEMA.  Plaintiff is neither a construction expert nor is she an expert on the FEMA requirements.  As such, Plaintiff had no way of identifying and communicating the major omissions of required materials and required procedures to repair the Property.  Because of this, all elements previously repaired must be brought to the standards promulgated by FEMA, which means additional expenses beyond the original policy limit.  Federal common law does not provide for an offset by Defendant for money misused on improper materials and improper procedures.  Plaintiff should not have to bear this burden.

28.     The following is an example of significant missteps by Wright and Powell, all of which are costly to correct.

- Lack of funds for the removal of all interior sheetrock, all insulation in the walls, all exterior sheathing, all exterior vapor barrier material, all exterior brick veneer. This is true for interior and exterior walls.

  - The NFIP regulations for flood damage-resistant materials are codified in Title 44 of the Code of Federal Regulations, in Section 60.3(a)(3), which states that a community shall:

    "Review all permit applications to determine whether proposed building sites will be reasonably safe from flooding. If a proposed building site is in a floodprone area, all new construction and substantial improvements shall...(ii) be constructed with materials resistant to flood damage..." (*Technical Bulletin 2 – August 2008*, page 2).

  - The footnote to page 4 of Technical Bulletin 2 reads as follows: "Floodwater is assumed to be considered "black" water; black water contains pollutants such as sewage, chemicals, heavy metals or other toxic substances that are potentially harmful to humans."

- All materials affected by "black" water as defined above must be replaced with acceptable class materials, i.e. those materials that best resist flood damage in the future.

- Plaintiff's home has paper backed materials that compose the exterior backer board.  This is defined as Class 3 material and is classified as unacceptable (*See Table 1 – Class Description of Materials, Technical Bulletin 2 – August 2008*, Page 4).  Backer board is also called sheathing material.  Quoting from the *Adjusters Claims Manual Addendum*, which expands upon and replaces the guidance in the NFIP Adjuster Claims Manual at Part 3, Section VIII, Paragraph P. for addressing sheathing when a wood-framed building constructed with masonry veneer siding is flooded, as to perimeter wall sheathing:

    The claim handling process should determine the type of sheathing material installed and the appropriate scope of repair.  Technical Bulletin 2 requires the removal and replacement of this material.

- The addendum also provides that "When Class 1, 2, or 3 sheathing material is in direct contact with floodwaters, the material is not salvageable, and the insurer does not need a report from a qualified professional to document the material's condition."

- These materials must now be replaced with FEMA required materials.  It is noted here that none of these materials specified by the original adjuster are acceptable by FEMA.  See Exhibit A for a complete listing.

- Furthermore, the addendum advises that "Multiple methods of repair may exist, including alternative interior approaches or an exterior approach, so the adjuster should obtain at least one estimate for each approach to document and support claim payment."  This was not done in this matter.

28

- The sill plates.

    - The sill plate is a 2 x 4 board attached horizontally to the slab into which the vertical studs are nailed in order to construct the walls of the residence.

    - During Hurricane Harvey, flood water seeped under this sill plate; as such it must be either cleaned or removed and replaced.

    - Plaintiff's policy states that the property will be brought up to equal or better condition than it was prior to the flood.

    - Replacing this sill plate requires specialized equipment, and according to Exhibit E the ceiling sheet rock also requires replacement, along with the blown insulation above it. This was not accounted for in the adjuster's work.

- Insulation.

    - The wall insulation does not meet FEMA requirements. FEMA requires closed cell foam insulation. *See Table 1 – Class Description of Materials, Technical Bulletin 2 – August 2008*, Page 10. Inorganic – fiberglass, mineral wool: batts, blankets, or blown – was stipulated in the adjuster's estimate and is of a much cheaper cost, but unacceptable as a class of building material.

- Cabinets.

    - Cabinets are required to be constructed from marine-grade plywood. Normal birch cabinet wood was adjusted in this case and so all cabinets must be removed and replaced. The removal of lower cabinets will also necessitate the replacement of the new countertop as this item is damaged in the removal of the cabinets.

- The brick veneer must be removed, cleaned and replaced for the following reasons:

- The brick veneer is attached to the stud walls with several strips of metal called brick ties. These brick ties are embedded into the brick as they are installed and then nailed to the exterior of the vertical studs.  These brick ties cannot be detached and then reattached in order to elevate the sill plate throughout the residence.  Straining forces on these brick ties will rupture the brick veneer.

  - Removal of the brick veneer is the appropriate way to expose the backer board and vapor barrier for replacement.

  - Plaintiff's brick absorbs biological and chemical contaminants and must be removed.  *See Technical Bulletin 2 – August 2008,* Page 6.

- Fasteners and connectors.

  - The regulations require fasteners and connectors made of stainless steel, hot-dipped zinc-coated galvanized steel, silicon bronze, or copper.  *See Technical Bulletin 2 – August 2008,* Page 12.

- Interior painting.

  - All of the interior must be repainted using FEMA required paints. Polyester-epoxy or oil-based paints are acceptable wall finishes when applied to a concrete structural wall. However, when the same paint is applied to a wood wall, it is no longer considered acceptable. A FEMA-supported study by Oak Ridge National Laboratory found that low-permeability paint can inhibit drying of the wood wall. *See Technical Bulletin 2 – August 2008,* Page 6.

- Doors.

  - The only door allowed by FEMA is either a fiberglass or a metal door.  This includes interior doors.  *See Technical Bulletin 2 – August 2008,* Page 9.

28

## CLAIMS FOR RELIEF

### BREACH OF CONTRACT

29.     Plaintiff repeats, reiterates and re-alleges each and every allegation set forth in the paragraphs above as if fully set forth herein.

30.     Plaintiff and Defendant entered into a contract when Plaintiff purchased, and Defendant issued the Policy.

31.     The Policy, at all times relevant and material to this case, provided flood insurance coverage to Plaintiff for, among other things, physical damage caused by flood to Plaintiff's property located at the address ascribed above.

32.     Plaintiff fully performed under the contract by paying all premiums when due and cooperating with Farmers regarding Plaintiff's claims. Plaintiff complied with all conditions precedent to Plaintiff's recovery herein, including filing a Proof of Loss, along with appropriate and adequate demands, or Defendant waived or excused such conditions precedent.

33.     Defendant failed to perform and materially breached the insurance contract when: (1) it erroneously accepted the adjuster's report that failed to include the required information about Plaintiff's loss and the damages sustained; and (2) it wrongly failed to pay Plaintiff for the amount it owed Plaintiff for storm damages to property that the Policy covered.

34.     By virtue of its various breaches of contract, including its failure to fully reimburse Plaintiff for the covered losses, Defendant is liable to and owe Plaintiff for the actual damages Plaintiff sustained as a foreseeable and direct result of the breach, all costs associated with recovering, repairing and/or replacing the covered property, together with interest and all other damages Plaintiff may prove as allowed by law.

### CONDITIONS PRECEDENT

35.     Plaintiff has satisfied all conditions precedent for bringing this action.

28

## **PRAYER**

WHEREFORE, the Plaintiff demands judgment against the Defendant for the amount due under the SFIP, costs and case expenses incurred in connection with the filing and prosecution of this action, reasonable and necessary attorney's fees, and, any and all other appropriate relief to which Plaintiff may be entitled.

Respectfully Submitted,
**THE OGGERO LAW FIRM**

BY:    */s/ George A. Oggero*
George A. Oggero
State Bar No. 24060360
george@golawtexas.com
P.O. Box 631382
Houston, Texas 77263
(713) 364-5759 (Office)
(844) 438-6546 (Facsimile)

**ATTORNEY FOR PLAINTIFF**